IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GEORGE MARTIN, M.D., et al.<br><br>Plaintiffs,<br><br>vs.<br><br>HOTEL AND TRANSPORATION CONSULTANTS, INC, et al.<br><br>Defendants,<br>_____<br><br>AND RELATED COUNTERCLAIMS AND CROSS CLAIM. | Civ. No. 17-00088 JMS-KSC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HOTEL AND TRANSPORTATION CONSULTANTS, INC. AND JOSE A. MENA'S MOTION TO DISMISS, ECF NO. 95 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS HOTEL AND TRANSPORTATION CONSULTANTS, INC. AND JOSE A. MENA'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiffs George Martin, M.D. ("Martin"), Advances in Cosmetic and Medical Dermatology Hawaii, LLC ("ACMD"), and Excellence in Rheumatology Education, LLC ("EIRE") (collectively "Plaintiffs") have filed a multi-count Second Amended Complaint ("SAC") against Defendants Jose A. Mena ("Mena") and Hotel and Transportation Consultants, Inc. ("HTC") (collectively

"Defendants") and others.[1] ECF No. 91. Defendants move to dismiss the SAC for failure to state a claim upon which relief may be granted. ECF No. 95. For the following reasons, the Motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

**A.  Factual Background**

Martin, a dermatologist, and Mena, a meeting planner, formed ACMD "to provide seminars and meetings on topics in cosmetic and medical dermatology." SAC ¶¶ 9-10. Mena is president of HTC, which was an initial member of ACMD. *Id.* ¶¶ 5, 9. In approximately 2007-2008, Martin purchased Defendants' interest in ACMD. *Id.* ¶ 12. The parties, however, continued a business relationship.

According to the SAC, Plaintiffs and "HTC/Mena" agreed (sometimes in writing but, as is pertinent here, orally)[2] that Mena and/or HTC would continue to provide meeting management services to Plaintiffs in exchange for Plaintiffs' designating them as meeting planners and agents on hotel contracts, entitling Defendants to commissions under those contracts. *Id.* ¶¶ 13-21. The SAC describes the meeting management services as "including, but not limited to,

---

[1] Defendant Marriot Hotel Services, Inc. ("Marriott") and Defendant GWR Wailea Property, LLC ("GWR") (collectively "Interpleader Defendants") have taken no position on the Motion.

[2] Two three-year written agreements cover the period from approximately 2009 to 2015. *See* SAC ¶ 15. Those written agreements, however, do not cover the actions alleged in this suit.

2

negotiation of hotel contracts and addenda, managing hotel contracts, ensuring accurate billing, managing attendees' hotel reservations, balancing reserved rooms, and managing the meeting website." *Id.* ¶ 13.

According to the SAC, in reliance on this oral agreement, Plaintiffs contracted to hold meetings in 2017 through 2021 at various resorts. *Id.* ¶¶ 22-28. Meeting locations include the Wailea Beach Marriott Resort and Spa on Maui, *id.* ¶ 22, the Grand Wailea Resort Hotel & Spa, also on Maui, *id.* ¶ 25, The Broadmoor in Colorado, *id.* ¶ 27, and the Hilton New Orleans Riverside, *id.*[3] ¶ 28. The contracts for these meetings provide for a 10% commission on room rates to be paid to HTC. *Id.* ¶¶ 24-28. The SAC alleges that "Defendant HTC was the Agent of Record and meeting planner for Plaintiffs under the contracts with Defendant Marriott," *id.* ¶ 22, and that "Defendant HTC and Defendant Mena were designated meeting planners under the contracts with Defendant GWR," *id.* ¶ 25. "Defendant Mena, as Meeting Planner, would also receive Hilton Honor points for a qualifying event." *Id.* ¶ 26.

---

[3] The SAC alleges that ACMD and EIRE contracted with Marriott, *id.* ¶ 22, and that ACMD contracted with GWR and The Broadmoor, *id.* ¶ 25. It does not specify which Plaintiffs contracted with Hilton New Orleans Riverside. *See id.* ¶ 28. It further alleges that Mena signed the contracts with Marriott "as President of Defendant HTC," that Martin signed the same contracts as "Program Chairman or Co-Chairman," *id.* ¶ 22, and that "Martin signed the contracts [with GWR] as Chairman and/or authorized representative of ACMD"; it states that, "Defendant Mena signed the contracts" with GWR, but it does not specify whether he did so in his individual or corporate capacity, *id.* ¶ 25.

3

Martin and Mena's business relationship apparently soured in about 2016. In March of that year, a dispute arose between them about registration fees for a summer 2016 meeting: "Martin had indicated he no longer would use Defendants HTC/Mena's services for meeting registration, and Defendants HTC/Mena claimed they were entitled to the funds as a cancellation fee." *Id*. ¶ 29. That dispute was resolved in Hawaii State court and resulted in a judgment against Defendants. *Id*. ¶¶ 30-31.

In the current suit, Plaintiffs allege that Defendants have "mismanaged the negotiations of Plaintiffs' hotel contracts." *Id*. ¶ 32. But the gravamen of Plaintiffs' complaint appears to be Defendants' refusal, since July 31, 2016, to provide certain meeting management services, specifically reservation assistance and "the hotel portion of services" for the 2017-2021 meetings. *Id*. ¶¶ 34-35. According to the SAC, "Defendants HTC/Mena acknowledged having provided the[se] services in the past, but claimed they were 'gratuitous.'" *Id*. ¶ 36.

Plaintiffs allege that they have "had to hire another company . . . to oversee and manage the work that should have been performed by Defendants." *Id*. ¶ 37. And they contend, among other things, that they or their new agents are entitled to the commissions and rewards payable under the relevant hotel contracts and/or that they are entitled to damages. *See id*. at ¶¶ 45, 50, 54, 61, 67, 72, 77 & A-H.

### B. Procedural Background

Plaintiffs originally filed suit in Hawaii State Court. ECF No. 1-1. The action was removed to this court on March 2, 2017, ECF No. 1, and HTC filed a Counterclaim, ECF No. 11. Plaintiffs filed a first amended complaint, ECF No. 16, in response to GWR's Motion for a more definite statement, ECF No. 10, which GWR then withdrew, ECF No. 31. After Marriott filed a Counterclaim and Crossclaim for Interpleader, ECF No. 40, and GWR filed a Motion for Interpleader Deposit, ECF No. 27, Interpleader Defendants were ordered to deposit all commission funds for their relevant contracts with the court registry, ECF Nos. 52, 55.

Plaintiffs filed the SAC on February 28, 2018. ECF No. 91. Defendants moved to dismiss on March 14, 2018. ECF No. 95. Plaintiffs filed an Opposition on May 8, 2018, ECF No. 108, and Defendants replied on May 15, 2018, ECF No. 110. A hearing was held on May 29, 2018.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital*

*Partners*, *LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs,* 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet — that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

## IV. **<u>DISCUSSION</u>**

### A.   **Allegations against Mena Individually**

Defendants first contend that "[b]y lumping 'HTC/Mena' together throughout the SAC" Plaintiffs have failed "to provide Mena with 'fair notice' of

6

the basis of the claims against him." Mot. at 12. And they contend that the SAC is devoid of "any factual allegations that could plausibly establish that Mena, individually, was a party to any contract with Plaintiffs, made any promises to Plaintiffs or owed any duty to Plaintiffs. Thus, the SAC fails to put Mena on notice of the claims against him." *Id*. at 2.

The court agrees. The SAC contains no clear allegation of Mena's individual liability, let alone any plausible factual support for such an allegation. To the contrary, Plaintiffs suggest throughout the SAC that the oral agreements underlying Plaintiffs' claims are materially similar to the 2009 and 2012 written agreements between Martin and HTC. And those agreements, the SAC expressly asserts were entered into by "Defendant Mena, *as President of Defendant HTC*." *Id*. ¶ 15 (emphasis added).

In their Opposition, Plaintiffs point out that the "written agreements did not address the allocation of rewards points under the hotel contracts" and that "[i]t was pursuant to oral agreement between HTC/Mena and Plaintiffs that Mena was designated by Plaintiffs to receive reward points under the hotel contracts."[4] Opp'n at 9. But again, Plaintiffs do not distinguish between Mena's corporate and

---

[4] The SAC mentions reward points only in conjunction with the GWR contracts, however, not the Marriott contracts. *See* SAC ¶¶ 24-28.

7

individual identities, nor do they point to any allegation in the SAC that plausibly asserts Mena made any agreement in his individual capacity.

Plaintiffs also contend that "Mena's individual liability under the oral agreements has already been established" by resolution of the 2016 dispute over registration fees. Opp'n at 10. But the only information contained in the SAC about the 2016 litigation is that the case involved "registration fees" for a "Summer 2016 meeting that belonged to Plaintiff Martin which were being improperly held by Defendants HTC/Mena"; that "HTC/Mena claimed they were entitled to the funds as a cancellation fee"; and that "the Court issued a Judgment in the amount of $14,413.34 in favor of Plaintiff Martin and against Defendants HTC/Mena." SAC ¶¶ 29-31. Nothing in these allegations suggests that the issue of Mena's personal liability under any oral agreement about meeting management services in exchange for commissions or other benefits was actually litigated and necessarily decided in that case. *See Dorrance v. Lee*, 90 Haw. 143, 148, 976 P.2d 904, 909 (1999) ("Issue preclusion, or collateral estoppel . . . prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in [an] earlier action.") (emphasis omitted); *see Spinney v. Greenwich Capital Fin. Prods., Inc.*, 2006 WL 1207400, at *8 (D. Haw. May 3, 2006) ("In contrast to res judicata, collateral estoppel does not bar litigation of all claims that were or could have been asserted. Rather, it only prevents a party from relitigating an issue

8

which was actually raised, litigated and decided in the prior action" (quoting *Pedrina v. Chun,* 906 F. Supp. 1377, 1402 (D. Haw. 1995)).

The SAC is DISMISSED as to all claims asserted against Mena individually, with leave to amend, if possible.  Any possible amendment must, however, clearly differentiate between actions taken and/or promises made in Mena's personal versus his corporate capacity; allegations against Mena without such specificity and allegations about "HTC/Mena" collectively will not be sufficient.

**B.     Declaratory Relief (Count I)**

Plaintiffs' claim for declaratory relief appears to be moot.  They request "that all commissions due from [Marriott and GWR] be paid into the Registry of the Court, until a determination is made by this Court" regarding Defendants' entitlement to those commissions.  SAC ¶¶ 44-45.  The court has already ordered such deposits.  To the extent Plaintiffs intend to assert in this claim grounds for their own entitlement to the funds (either for themselves or their new agents), *see id*. ¶¶ 42-43, the claim duplicates other claims discussed below.  Therefore, Count I of the SAC for "declaratory relief" is DISMISSED without leave to amend.

///

///

## C. Breach of Contract, Unjust Enrichment, and Promissory Estoppel (Counts II, V, VII)

Defendants contend that Plaintiffs have "failed to plausibly allege that a valid and enforceable contract exists." Mot. at 17 (capitalization omitted). Specifically, they assert that Plaintiffs have failed to "identify '(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by the Defendant; (5) when and how the Defendant allegedly breached the contract; and (6) how Plaintiff was injured.'" Mot. at 17-18 (quoting *Nottage v. Bank of New York Mellon*, 2012 WL 5305506, at *8 (D. Haw. Oct. 25, 2012)). But they focus their argument on Plaintiffs' contention that the "oral agreements for commissions in exchange for meeting management services" were to be "performed within one (1) year." SAC ¶ 20. And they assert that Plaintiffs' allegations are "a transparent effort to avoid the Statute of Frauds." Reply at 10.

But Defendants do not rely on the statute of frauds as a ground for dismissal, nor do they assert the impossibility of one or more exceptions to the statute of frauds applying here. *See, e.g., McIntosh v. Murphy*, 52 Haw. 29, 33-34, 469 P.2d 177, 180 (1970) (discussing the "drastically limited" nature of the statute of frauds and various judicial "method[s] of circumvention," including enforcement of oral contracts where there has been partial performance). And,

although precisely what Plaintiffs mean about intended yearly performance is unclear, the gist of their breach-of-contract claim is plain. In short, Defendants claim greater confusion than is warranted.

Plaintiffs have alleged that they named "HTC/Mena" as meeting planners and/or agents in exchange for Defendants' promise to provide meeting management services. *Id*. ¶¶ 13-21. They further allege that they performed their end of the bargain by "designating Defendants HTC/Mena as their agent, designated representative and/or meeting planner" on contracts for meetings to be held in 2017-2021. *Id*. ¶ 20. Defendants do not dispute that they informed Plaintiffs in July 2016 that they would not provide the hotel portion of their usual meeting management services. And Plaintiffs allege that they have suffered damages in the form of additional expenses to hire another entity to perform the work. *See id*. ¶ 37. Thus, the SAC includes sufficient factual allegations to state a plausible claim for breach of contract.

Defendants suggest that Plaintiffs' allegation of a promise or promises to provide meeting management services for the 2017-2021 meetings is simply incredible. *See* Mot. at 18; *see also* Defendants' related arguments regarding unjust enrichment and promissory estoppel, Mot. at 28, 35. But the plausibility requirement stated in *Twombly* and *Iqbal* does not allow this court to make *credibility* determinations at the motion-to-dismiss stage. *Cf. Twombly*, 550 U.S.

at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage."); *see also Aliya Medcare Fin., LLC v. Nickell*, 2015 WL 11072180, at *12 (C.D. Cal., Sept. 25, 2015) quoting *Sollberger v. Wachovia Sec., LLC.*, 2010 WL 2674456 (C.D. Cal. June 30, 2010) ("It is not for the court to gauge the credibility of Plaintiff's allegations at this stage [a motion to dismiss] . . . ."))). Rather, in assessing a motion to dismiss, the court is obligated to accept as true *factual* allegations (i.e. allegations that are more than mere legal conclusions or recitals of elements of causes of action) and to draw reasonable inferences in favor of Plaintiffs.

Accordingly, Defendants' Motion is DENIED as to Count II for breach of contract. Furthermore, because Defendants' arguments regarding Counts V and VII for unjust enrichment and promissory estoppel, respectively, are also dependent on Defendants' contention that no plausible allegation exists of a promise to provide meeting management services for the 2017-2021 meetings, *see* SAC ¶¶ 28, 35, the Motion is DENIED as to those counts as well.

**D.     Breach of Good Faith and Fair Dealing (Count III)**

Count III of the SAC includes no independent factual allegations and appears to rest on the same facts that underlie the breach-of-contract claim. *See* SAC ¶¶ 51-54. To the extent that Plaintiffs intend with this claim to assert that those same facts also constitute a breach of the covenant of good faith and fair

dealing implied in all contracts, the claim may proceed as part of the breach-of-contract claim. *See Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 123-24, 920 P.2d 334, 337-38 (1996) ("[E]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."). To the extent that Plaintiffs attempt with this Count to allege a tort claim based in bad faith, however, that claim is DISMISSED without leave to amend, as Hawaii has not recognized such a claim outside of the insurance context or, perhaps a situation involving a "special relationship[]" not conceivably present here. *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1050 (D. Haw. 2010); *see Francis v. Lee Enters. Inc.*, 89 Haw. 234, 238-39, 971 P.2d 707, 711-12 (1999); *Best Place*, *Inc.* 82 Haw. at 123-24, 920 P.2d at 337-38.

**E.     Breach of Trust and Fiduciary Duty (Count IV)**

"In general, '[t]he elements of a cause of action for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting damage.'" *Seo Kyoung Won v. England*, 2009 WL 10677756, at *7 (D. Haw. Aug. 13, 2009) (quoting *Pellegrini v. Weiss*, 165 Cal App. 4th 515, 524 (2008)); *see Swift v. Swift*, 2016 WL 3573970, at *3 (Haw. Ct. App. June 30, 2016).

13

"Whether a fiduciary duty exists is a question of law." *Lahaina Fashions, Inc. v. Bank of Haw.*, 129 Haw. 250, 265, 297 P.3d 1106, 1121 (Ct. App. 2013), *aff'd in part and vacated in part*, 131 Haw. 437, 319 P.3d 356 (2014). Generally, "[i]n Hawaii, a fiduciary duty is imposed by statute or a special relationship." *One Wailea Dev., LLC v. Warren S. Unemori Eng'g, Inc.*, 2016 WL 2941062 (Haw. Ct. App. 2016); *see also Swift*, 2016 WL 3573970, at *3. ("A fiduciary relationship exists when there is a relationship of trust and confidence."). "[A] conventional business relationship between parties dealing at arm's length does not give rise to fiduciary duties." *Lahaina Fashions, Inc.*, 131 Haw. at 456, 319 P.3d at 375. An agency relationship, however, is by definition fiduciary in nature. *Matter of Pac. Adventures, Inc.*, 5 F. Supp. 2d 874, 880 (D. Haw. 1998) (citing Restatement (Second) of Agency § 1(1) (1958)). And the Hawaii Supreme Court has described fiduciary duties as "comprised of utmost good faith, integrity, honesty, and loyalty, as well as a duty of due care and diligence)." *Prop. House, Inc. v. Kelley*, 68 Haw. 371, 377, 715 P.2d 805, 810 (1986) (describing fiduciary duties of real estate broker).

The SAC alleges that "because of their position as Plaintiffs' agent, designated meeting planner and/or representative under the hotel contracts and addenda [Defendants] held a position of trust with Plaintiffs." SAC ¶ 57. They describe Defendants' alleged breach of trust or fiduciary duty as follows:

14

> Defendants HTC/Mena negotiated hotel contracts and
> addenda to its own benefit to the detriment of its
> principals, Plaintiffs, by, inter alia, its negotiation of
> commissions and rewards for itself, but then improperly
> terminating its agency and services, while still claiming
> the commissions and rewards; by failing to properly
> negotiate hotel contracts and addenda; by failing to fully
> perform its obligations to Plaintiffs as agent, designated
> meeting planner and/or representative; and by failing to
> act on Plaintiffs' behalf in meeting their obligations
> under the hotel contracts and addenda.

SAC ¶ 58.

At bottom, however, Plaintiffs merely allege a breach of contract — refusal to perform services Defendants allegedly agreed to perform. No factual allegations support the contention that Defendants failed to properly negotiate the hotel contracts. And to the extent Plaintiffs' allegations regarding the misalignment of room nights and/or untimely requested additional rooms are intended to support this contention, Plaintiffs have alleged no resulting damages. Rather, Plaintiffs claim only that Defendants have refused or are refusing to perform contractually agreed-upon tasks. These allegations are insufficient to state a claim for breach of fiduciary duty. Count IV is therefore DISMISSED with leave to amend.

## F.     Equitable Reformation of Contract (Count VI)

Plaintiffs request in Count VI of the SAC that the "hotel contracts between Plaintiffs and [Defendants Marriott and GWR] be equitably reformed so

that . . . commissions are not paid to Defendant HTC or Defendant Mena, and are paid instead to Plaintiffs or their new agent." SAC ¶ 72. Reformation is "a traditional power of an equity court" used to prevent fraud or mistake. *Cigna Corp. v. Amara*, 563 U.S. 421, 440-41 (2011). It is also a potential remedy in some breach-of-contract actions. *See, e.g,. Guddee v. Abudanza, Inc.*, 2007 WL 4354420 (D. Haw. Dec. 12, 2007) ("When there has been a breach of a contract, the nonbreaching party may elect its remedy, choosing from among 'damages, reformation, and rescission." quoting *Lemle v. Breeden*, 51 Haw. 426, 436, 462 P.2d 470, 475 (1969))). But Plaintiffs have not alleged a breach of its contracts with Interpleader Defendants, only a breach of their oral contract(s) with HTC/Mena.

Furthermore, "reformation may be had when the written instrument does not, through a mutual mistake of fact, conform to the intention of the parties to the instrument." *State v. Kahua Ranch, Ltd.*, 47 Haw. 28, 33, 384 P.2d 581, 585 (1963). And Plaintiffs argue that there was such a mistake in that "Plaintiffs and the hotels' intent was not just to name the party that negotiated the contracts, but also the agent to manage the meetings and reservations that were the subject of the contracts." Opp'n at 31. But the SAC does not contain a similar allegation. Count VI of the SAC is therefore DISMISSED with leave to amend.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Counts I (Declaratory Relief) and III (Breach of Good Faith and Fair Dealing) are DISMISSED without leave to amend. Counts II (Breach of Contract), V (Unjust Enrichment), and VII (Promissory Estoppel), may proceed as stated against HTC but are DISMISSED with leave to amend as to Mena. Counts IV (Breach of Trust and Fiduciary Duty) and VI (Equitable Reformation of Contract) as to both Mena and HTC are DISMISSED with leave to amend.

Plaintiffs may file a Third Amended Complaint no later than Friday, June 22, 2018.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 1, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Martin v. Hotel and Transp. Consultants, Inc.*, Civ. No. 2017-00088 JMS-KSC, Order Granting in Part and Denying in Part Defendants Hotel and Transportation Consultants, Inc. and Jose A. Mena's Motion to Dismiss, ECF No. 95